UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TYIONA P.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

24-CV-1035-LJV
DECISION & ORDER

---

On October 24, 2024, the plaintiff, Tyiona P. ("Tyiona"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she is not disabled.[2] *Id.* On January 22, 2025, Tyiona moved for judgment on the pleadings, Docket Item 4; on April 23, 2025, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on May 8, 2025, Tyiona replied, Docket Item 14.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Tyiona had previously applied for and received Supplemental Security Income ("SSI") based on her disability during childhood. She now seeks continued benefits during adulthood. SSI is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). The Social Security Administration uses a five-step evaluation process to determine eligibility for the SSI program. *See* 20 C.F.R. § 416.920(a)(4).

For the reasons that follow, this Court denies Tyiona's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On August 20, 2014, an application was filed on behalf of Tyiona—who was then a minor—for SSI benefits. Docket Item 4-1 at 2. The application was approved on October 7, 2014, and later upheld upon review on December 16, 2016. *Id.*; Docket Item 3 at 95. Because all child recipients of SSI benefits must have their eligibility redetermined when they are eighteen, *see* 20 C.F.R. § 416.987, Tyiona's case was re-evaluated on February 1, 2022. Docket Item 3 at 77–92. Jamie Connor, M.D., then found that Tyiona no longer was disabled and recommended cessation of her SSI benefits. *Id.* at 91–92.

Tyiona applied for reconsideration, but the hearing officer, Kimberly Schulz, concurred with Dr. Connor's finding. *See id.* at 128–37; 20 C.F.R. § 416.1429 *et seq.* And after a hearing challenging both determinations, an ALJ agreed that Tyiona was not disabled as of February 1, 2022. *See* Docket Item 3 at 22. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 22–24.

The ALJ first found at step one that "the rule used for individuals who are engaging in substantial gainful activity" does not apply when "redetermining disability at age [eighteen]." *Id.* at 23; 20 C.F.R. § 416.987(b). At step two, the ALJ found that Tyiona suffered from two severe, medically determinable impairments: "attention deficit and hyperactivity disorder (ADHD) and generalized anxiety disorder." Docket Item 3 at 24.

At step three, the ALJ found that Tyiona's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 25–26. More specifically, the ALJ found that Tyiona's impairments did not meet or medically equal listings 12.04 (depressive, bipolar, or related disorders) or 12.11 (neurodevelopmental disorders). *Id.* In assessing Tyiona's mental impairments, the ALJ found that she was: (1) moderately impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) not impaired in adapting or managing herself. *Id.*

The ALJ then found that Tyiona had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Tyiona can] understand and remember simple tasks and instructions, and can sustain attention and concentration to carry out simple tasks and instructions.

*Id.* at 26–30.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

At step four, the ALJ found that Tyiona did not have any past relevant work. *Id.* at 30. But given Tyiona's age, education, and RFC, the ALJ found at step five that she could perform substantial gainful activity as a janitor, hand packer, or laundry worker. *Id.* at 31; *see Dictionary of Occupational Titles* 381.687-018, 1991 WL 673258 (Jan. 1, 2016); *id.* at 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 361.685-018, 1991 WL 672987 (Jan. 1, 2016). The ALJ therefore found that Tyiona's "disability ended on February 1, 2022, and [that she] ha[d] not become disabled again since that date." *See* Docket Item 3 at 32.

## II. ALLEGATIONS

Generously reading Tyiona's motion, this Court finds that she raises two issues. *See* Docket Item 4-1 at 12–20. First, she argues that the ALJ erred by not including social restrictions in the RFC. *Id.* at 12–16, 17–20. Second, she argues that the ALJ's failure to obtain an intellectual evaluation violated his duty to develop the record. *Id.* at 16–17. For the reasons that follow, this Court disagrees.

## III. ANALYSIS

### A. The RFC determination

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024) ("There is no blanket requirement that [an ALJ's] decision must be supported

by a congruous medical opinion"). So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (joining five other circuits in holding that remand is not necessary "[w]here an ALJ's analysis at Step Four . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Tyiona argues that the ALJ's determination that "no social restrictions were necessary" in the RFC "was not substantially supported" by the evidence. Docket Item 4-1 at 12. In particular, she points to her "long history and evidence of difficulty with social interactions," which she says is established through school records, personal testimony, and evidence of an arrest involving a domestic disturbance. *Id.* at 13. Tyiona says that by "ignor[ing]" that "long history," the ALJ improperly cherry-picked the record evidence. *Id.* But the ALJ did not ignore—indeed, he explicitly addressed—Tyiona's school records and testimony. Therefore, this Court disagrees.

The Social Security Administration has promulgated specific guidance with respect to evaluating disability in young adults, defined as those "between the ages of 18 [and] approximately 25." SSR 11-2p, 2011 WL 4055665, at *2 (Sep. 12, 2011). As Tyiona correctly observes, that guidance states that "evidence about a young adult's functioning from school programs, including [IEPs,] . . . may indicate how well a young adult can use his or her physical or mental abilities to perform work activities." *Id.* at *7. For that reason, Tyiona argues that the ALJ improperly discounted teacher

questionnaires evaluating her mental capabilities, educational level, and behavioral performance as a student. Docket Item 4-1 at 14.

But nothing in SSR 11-2p suggests that an ALJ must give those records controlling weight. *See* 2011 WL 4055665, at *5–7. And the ALJ explicitly evaluated Tyiona's school records, finding that they were "of limited probative value." Docket Item 3 at 30. For example, the ALJ discounted the three teacher questionnaires because they pre-dated Tyiona's termination of benefits by several years, *see id.* at 270–82, 333–43, 405–24 (evaluations in 2016 and 2018), and because more recent medical records demonstrated a trend of improvement.[5] The ALJ thus weighed the probative value of the teacher questionnaires, and "the deferential standard of [Social Security] review prevents [this Court] from reweighing [them]." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order).

Tyiona also argues that the ALJ "fail[ed] to consider relevant and probative evidence favorable to [her]" from her function report, hearing testimony, and medical records. Docket Item 4-1 at 17–18 (citing, for example, *id.* at 395–403 (discussing self-isolation and issues with authority); 45–49 (addressing social anxiety and irritation with others); 506–15 (detailing emergency psychiatric evaluation after domestic disturbance)). But contrary to Tyiona's assertion, the ALJ explicitly addressed much of the evidence she claims he failed to consider. *Compare* Docket Item 4-1 at 17 *with*

[5] *See, e.g.*, *id.* at 27 ("Her providers consistently noted improvement in her symptoms with treatment.") (citing *id.* at 528, 565), 29 (finding Dr. Phillips's report "consistent with the findings of the claimant's primary care provider" who said that Tyiona "was improving on medication.") (citing *id.* at 541); *compare id.* at 588 *with id.* at 591 (noting Tyiona's improvement throughout treatment with Tammy Kling, LCSW, from more anxious to "pleasant and cooperative" and "a bit brighter and less guarded.").

Docket Item 3 at 26–27 (summarizing Tyiona's testimony, including that she "feel[s] like people are against her" and "does not spend time with many other people[,]" as well as her failure to keep a job because "it was too frustrating and she did not like being told what to do."). And when formulating an RFC, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) (summary order) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)) (citation modified).

Indeed, among the myriad "relevant and probative evidence" that Tyiona says the ALJ ignored, the only evidence that the ALJ did not expressly address is that involving the domestic disturbance. *See* Docket Item 4-1 at 9–10, 17; Docket Item 3 at 26–30. On the night at issue, Tyiona allegedly threatened family members with a knife after an argument with her sister in which she was told "that she couldn't see her niece." *Id.* at 507, 523 ("[police department] stated that . . . [Tyiona] had a knife and was trying to hurt [her] family"). The police were called and Tyiona was arrested, charged with menacing in the second degree, and brought to the Erie County Medical Center for an emergency psychiatric assessment. *Id.*; *see generally id.* at 506–515; *see also* Docket Item 4-1 at 9.

Given the seriousness of this event, perhaps the ALJ should have discussed it with Tyiona at the hearing or referred to it in his decision. But when inquiring at the hearing about the relationship with her family and her arrest history, the ALJ gave Tyiona several opportunities to raise the issue herself. For example, the ALJ asked whether she "got along okay with [her mother]," and Tyiona indicated that "[n]ow" she

does and that her mom is “a big help.” Docket Item 3 at 46–47. Tyiona later said that “I’d rather just be around my family[,] [m]y mother and my siblings” and that she had been “getting along better with family” after she stopped counseling. *Id.* at 49, 52. And when the ALJ asked whether she had “ever been arrested or [had] any police involvement” in the past three years,[6] Tyiona said that she had not. *Id.* at 48.

What is more, Tyiona repeatedly told medical providers that her relationship with her mother and family had recently improved. *See, e.g.*, *id.* at 528 (“Improved [r]elationships with parents [and] siblings” noted by Robert Kuchuk, M.D., in June 2021); *id.* at 565 (confirming same in October); *id.* at 541 (“Family relationships were described as close with her mother” during 2022 exam by Ruby Phillips, Psy.D.). So while the arrest may have been cause for concern, sufficient evidence—including medical opinions—supports the finding that Tyiona had no social limitations during the relevant time period, beginning approximately two years after the incident.

Finally, the ALJ appropriately relied on opinion evidence in formulating the RFC. In finding that Tyiona was moderately limited in the domains of concentrating, persisting, or maintaining pace and understanding, remembering, or applying information, the ALJ explicitly cited the psychiatric evaluation of Dr. Phillips. *See id.* at 25 (citing *id.* at 540–41). More important, when the ALJ found that Tyiona was only mildly limited in interacting with others—obviating the need for social limitations in the RFC—he cited Dr. Phillips’s opinion that Tyiona faced “no . . . limitation[s] in the ability

[6] The precise date of Tyiona’s arrest in 2020 falls just outside the “two to three year” window the ALJ provided. Docket Item 3 at 506. Still, given Tyiona’s insistence that records of the incident would support her claim of disability, the non-adversarial nature of the hearing, and that criminal charges were no longer pending, the ALJ’s question was a natural place to raise the issue.

to interact adequately with supervisors, coworkers, and the public." *Id.* at 25 (citing *id.* at 541). And the ALJ's "[o]verall" determination that Tyiona's "statements concerning . . . [her] symptoms are not entirely consistent with the medical evidence," *id.* at 27, was supported by Dr. Phillips's "mostly normal" mental status examination that the ALJ found "consistent with other evidence of the record," *id.* at 29 (comparing *id.* at 541 with *id.* at 588, 591).

Likewise, in limiting Tyiona to "simple tasks and instructions," *id.* at 26, the ALJ relied on the opinions of Hillary Tzetzo, M.D., and Jennifer May, Psy.D. *Id.* at 29 (citing *id.* at 83–84, 557–58, 559–562). Dr. Tzetzo initially opined that Tyiona "can handle simple work tasks" and that Tyiona's attention, concentration, and memory skills were intact. *See id.* at 83–84. Ten months later, Dr. May reaffirmed that Tyiona "remains capable of simple work tasks," *id.* at 557–58, while finding her markedly limited in carrying out more detailed instructions. *Id.* at 559. So, the ALJ appropriately and reasonably based his RFC determination on the evaluations or assessments of Drs. Phillips, Tzetzo, and May.

In sum, Tyiona's dispute is with the way the ALJ weighed the record evidence. But it is not the role of this Court to re-weigh evidence or determine *de novo* whether a claimant is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Instead, this Court's role is to ensure that the ALJ's decision relied on substantial evidence. *See Genier*, 606 F.3d at 49 ("Even where the administrative record may [] adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (citation modified). Because the ALJ was "entitled to weigh all of the evidence available to make

an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, his decision is supported by substantial evidence and this Court will not second-guess it. *See Biestek*, 587 U.S at 103 ("[T]he threshold for [substantial] evidentiary sufficiency is not high" in the SSA context).

### B. ALJ's Duty to Develop the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5; *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (An ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.") (citation modified).

Tyiona asserts that the ALJ failed in his duty to develop the record by not obtaining the "intellectual exam" recommended by Dr. Phillips. Docket Item 4-1 at 16. Tyiona says that the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits," and she faults the ALJ for finding Dr. Phillips's opinion persuasive but not acquiring a "clearer picture of [her] cognitive functioning." *Id.*

(quoting *Sims v. Apfel*, 530 U.S. 103, 11 (2000)) (citation modified). Again, this Court disagrees.

To begin, while it is true that an ALJ must "investigate and develop the facts and develop the arguments," *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011), the "duty to develop the record is not limitless." *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 47 (W.D.N.Y. 2021) (citing *Rosa*, 168 F.3d at 79 n.5). Here, the record included a psychiatric consultative examination by Dr. Phillips, Docket Item 3 at 538–42, regular checkups by Dr. Kuchuk documenting mental status and medications, *id.* at 527–30, 564–67, and reports of mental health counseling, *id.* at 586–93, 594–600. Such a wide range of medical and opinion evidence assures this Court that there were no "obvious gaps" that should have prompted the ALJ to develop the record further.

Moreover, although an ALJ's duty to develop the record continues "even when a claimant is represented by counsel," *Perez*, 77 F.3d at 47, that duty is lessened when counsel assures the ALJ that the record is complete. *See, e.g.*, *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order) (finding that ALJ fulfilled duty to develop record when ALJ queried counsel regarding missing records and counsel said they had "nothing further to add"); *Gabriel A. v. Comm'r of Soc. Sec.*, 2025 WL 2653116 at *11 (W.D.N.Y. Sept. 16, 2025) (collecting cases holding same). And here, Tyiona's counsel twice made such assurances. *See* Docket Item 3 at 41–42. When the hearing began, the ALJ asked whether "all the relevant evidence has been submitted into the record," and counsel replied in the affirmative. *Id.* A short time later,

the ALJ noted that Tyiona had submitted a "five-day letter"[7] indicating that some of the requested medical evidence was still outstanding, and he asked whether "all that evidence [had] been submitted now[.]" *Id.* Counsel again confirmed that all outstanding evidence, except for one record that was no longer relevant, had been submitted. *Id.* at 42.

The fact that Dr. Phillips, the consulting mental health examiner, recommended an "intellectual evaluation" does not change the calculus for several reasons. First, it was up to Tyiona's treating providers—not the ALJ—to consider and decide whether to follow that recommendation. Second, because it is Tyiona's burden to show that she was disabled, her lawyers could have pursued such an exam but did not and, in fact, told the ALJ that the record was complete. *See id.* (stating "there is no outstanding evidence."); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (summary order) ("The claimant has the general burden of proving that he or she has a disability within the meaning of the Act") (citation modified).

Third, and most practically, the ALJ found that Tyiona had significant intellectual limitations and therefore limited Tyiona to "simple tasks and instructions." Docket Item 3 at 26; *see id.* at 29, 31 (noting Tyiona's "difficulty with tasks involving concentration" and finding her ability to work "compromised by nonexertional limitations"). Tyiona's argument here is not that the ALJ failed to include adequate intellectual limitations in the RFC; rather, it is that the ALJ failed to include adequate interpersonal limitations. And

[7] Under the regulations, claimants must submit evidence or information about pending/unavailable evidence to an administrative law judge "no later than [five] business days before the date of the scheduled hearing." 20 C.F.R. § 404.935.

the intellectual evaluation recommended by Dr. Phillips would likely have shed little light on that.

Finally, the authority Tyiona cites is unpersuasive because those cases involved situations far different than hers. In *Schwartz v. Halter*, 134 F. Supp. 2d 640, 656–58 (E.D. Pa. 2001), for example, *see* Docket Item 4-1 at 16–17, the claimant's attorney specifically asked for additional testing; when the ALJ chose not to have that testing done, there was no evidence in the record as to the claimant's mental functioning. *Schwartz*, 134 F. Supp. 2d at 656–58. Here, by contrast, not only did Tyiona's counsel assert that the record was complete, Docket Item 3 at 42, but the record included mental health records as well as a consultative psychiatric exam and a resulting opinion that the ALJ found to be "mostly persuasive." *Id.* at 28–29.

Tyiona also cites *Laveck v. Astrue*, 2012 WL 4491110, at *5–7 (N.D.N.Y. 2012), *see* Docket Item 4-1 at 17, but she again overstates what that case found. The court in *Laveck* explained that the ALJ had completely missed several mental impairments identified by the consultative examiners, had made "nothing more than conclusory statements" when resolving the conflicting opinions of those examiners, and fashioned the RFC in "the absence of any [related] evidence." 2012 WL 449110 at *6-7. Here, on the other hand, the ALJ identified the relevant mental impairments and analyzed the relevant medical records and opinion evidence in formulating the RFC. *See* Docket Item 3 at 25–26, 28–29; 20 C.F.R. § 404.1520c(b)(2).

In sum, substantial evidence supports the ALJ's findings even without the intellectual evaluation that Dr. Phillips recommended. *Cf. DeChirico v. Callahan,* 134 F.3d 1177, 1182-83 (2d Cir. 1998) (explaining that even where "substantial evidence in

the record" supports the claimant, if "there was also substantial evidence in the record from which the ALJ could have reasonably held" against them, "we cannot say that the ALJ's finding . . . was unsupported by the record."). And even if that were not so, it was the obligation of Tyiona, her doctors, and her lawyers—not the ALJ—to obtain that evaluation. The ALJ thus did not commit "an error of law . . . that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Tyiona's motion for judgment on the pleadings, Docket Item 4, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 12, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: November 9, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE